**E-FILED**
Monday, 14 July, 2014 10:20:20 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
CHAMPAIGN, ILLINOIS

| | |
|---|---|
| DAVID C. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| vs. | ) Case 14-2170 |
| | ) |
| MARK MASSE, CARLE THERAPY SERVICES, | ) |
| and CARLE HEALTHCARE, INC. | ) |
| | ) |
| Defendants, | ) |

## COMPLAINT

### I. PARTIES

NOW COMES the Plaintiff, DAVID C. HILL, by and through WILLIAM R. TAPELLA, of TAPELLA & EBERSPACHER LLC, his attorneys, and for his complaint against the Defendants, MARK MASSE, and CARLE FOUNDATION HOSPITAL, states:

1.      The Plaintiff, DAVID C. HILL, resides in Crofton, Christian County, Kentucky and is a citizen of Kentucky and the United States of America.

2.      MARK MASSE is a physical therapist and licensed to practice physical therapy by the State of Illinois.

3.      At all times relevant to the issues raised in this complaint, MARK MASSE practiced physical therapy in Charleston, Coles County, Illinois, as the actual and/or apparent agent of CARLE FOUNDATION HOSPITAL.

4.      At all times relevant to the issues raised in this complaint, CARLE FOUNDATION HOSPITAL operated as an Illinois Not-For-Profit Corporation engaged in the

business of providing healthcare services, including physical therapy services, in central Illinois, with its principal place of business in Urbana, Champaign County, Illinois.

## II.    JURISDICTION

5.      The jurisdiction of this Court is predicated upon diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

6.      The matter in controversy exclusive of interest and cost, exceeds the sum specified by 28 U.S.C. §1332, Seventy-Five Thousand Dollars ($75,000.00).

## III.    VENUE

7.      Pursuant to 28 U.S.C. §1391(b), venue for this action is proper in the United States District Court for the Central District of Illinois, in that Defendant, CARLE FOUNDATION HOSPITAL is in Champaign County, Illinois, the Defendant, MARK MASSE, resides in Coles County, Illinois, and the acts or omissions giving rise to this claim occurred in Coles County, Illinois.

## IV.    COUNT I  vs.  MARK MASSE

8.      The Plaintiff first presented to MARK MASSE, for care and treatment on or about March 10, 2008, for the purpose of rehabilitating the Plaintiff's left shoulder following left rotator cuff repair surgery.  The Defendant, MARK MASSE, continued to provide care and treatment for the Plaintiff's left shoulder through July 29, 2008.

9.      At all times relevant to the issues raised in this complaint, MARK MASSE held himself out and impliedly represented that he possessed and would apply the knowledge and use the skill and care ordinarily used by a reasonably, well qualified physical therapist.

10.     Notwithstanding the implied representation of the Defendant, MARK MASSE, as aforesaid, on and prior to July 29, 2008, the Defendant committed one, or more, or a combination of the following negligent acts or omissions, to wit:

A.     Engaged the Plaintiff in physical therapies that were not appropriate to the Plaintiff's condition;

B.     On or about May 29, 2008, changed the therapies to be performed during physical therapy to include progressive resistance exercise, or weight training, and did so without first working progressively with the Plaintiff, from no weight or lighter weights to heavy weights;

C.     On or about July 3, 2008, initiated box lift exercise which were inappropriate to the Plaintiff's condition, or, in the alternative, instituted box lift exercises at weights that were greater than appropriate for the Plaintiff's condition; and

D.     After recognizing that the Plaintiff was "challenged by current progression" and that the Plaintiff "continued to have some weakness in his left shoulder" and the Plaintiff experienced soreness and weakness in the left shoulder, as a result of the exercises and weights used in therapy, the Defendant failed to withdraw exercises and lifting from the Plaintiff's physical therapy regimen.

11.     As a direct and proximate result of one or more, or a combination of the negligent and careless acts or omissions of the Defendant, MARK MASSE, as aforesaid, the Plaintiff, DAVID C. HILL, on or about July 14, 2008, or in the alternative on or about July 16, 2008, suffered a tear to the rotator cuff in the Plaintiff's left shoulder.  Despite injury on or about July

–3–

14, 2008, or in the alternative on or about July 16, 2008, Defendant, MARK MASSE, continued to engage in physical therapy inappropriate for Plaintiff's condition through July 29, 2008.

12.     As a direct and proximate result of the tear in the Plaintiff's left rotator cuff, caused by the Defendant's negligence, the Plaintiff has suffered great pain and mental anguish, has been unable to return to work and has lost wages and will in the future continue to lose wages, has incurred significant medical bills and will in the future continue to incur significant medical bills, has been unable to engage in his activities or normal life and remains unable to engage in activities in normal life.

WHEREFORE, the Plaintiff, DAVID C. HILL, prays that this Court enter a judgment in his favor and against the Defendant, MARK MASSE, as follows:

A.     Compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00); and

B.     For such other relief as this Court deems just and appropriate.

## V.     COUNT II   vs.   CARLE FOUNDATION HOSPITAL

NOW COMES the Plaintiff, DAVID C. HILL, by WILLIAM R. TAPELLA, by TAPELLA & EBERSPACHER LLC, his attorneys, and for Count II of his complaint against the Defendant, CARLE FOUNDATION HOSPITAL, states:

13.     The Plaintiff first presented to CARLE FOUNDATION HOSPITAL, for physical therapy on or about March 10, 2008, for the purpose of rehabilitating the Plaintiff's left shoulder following left rotator cuff repair surgery.  The Defendant, CARLE FOUNDATION HOSPITAL, continued to provide physical therapy services for the Plaintiff's left shoulder through July 29, 2008.

–4–

14.     At all times relevant to the issue raised in this complaint, the Defendant, CARLE FOUNDATION HOSPITAL, held out and impliedly represented that MARK MASSE possessed and would apply the knowledge and use the skill and care ordinarily used by a reasonably, well qualified physical therapist.

15.     Notwithstanding the implied representations of the Defendant, CARLE FOUNDATION HOSPITAL, the Defendant, by and through its actual and apparent agent, MARK MASSE, acting within the scope of this employment, committed one, or more, or a combination of the following negligent acts or omission, to wit:

    a.    Engaged the Plaintiff in physical therapies that were not appropriate to the Plaintiff's condition;

    b.    On or about May 29, 2008, changed the therapies to be performed during physical therapy to include progressive resistance exercise, or weight training, and did so without first working progressively with the Plaintiff, from no weight or lighter weights to heavy weights;

    c.    On or about July 3, 2008, initiated box lift exercise which were inappropriate to the Plaintiff's condition, or, in the alternative, instituted box lift exercises at weights that were greater than appropriate for the Plaintiff's condition; and

    d.    After recognizing that the Plaintiff was "challenged by current progression" and that the Plaintiff "continued to have some weakness in his left shoulder" and that the Plaintiff experienced soreness and weakness in the left shoulder, as a result of the exercises and weights used in

–5–

therapy, the Defendant failed to withdraw exercise and lifting from the Plaintiff's physical therapy regimen.

16.     As a direct and proximate result of one or more, or a combination of the negligent and careless acts or omissions of the Defendant, CARLE FOUNDATION HOSPITAL, acting by and through its actual and or apparent agent, MARK MASSE, who was acting within the scope of his employment, the Plaintiff, DAVID C. HILL, suffered a tear to the rotator cuff in the Plaintiff's left shoulder on or about July 14, 2008, or in the alternative on or about July 16, 2008. Despite injury on or about July 14, 2008, or in the alternative or on or about July 16, 2008. Defendant, MARK MASSE, continued to engage in physical therapy inappropriate for Plaintiff's condition through July 29, 2008.

17.     As a direct and proximate result of the tear in the Plaintiff's left rotator cuff, caused by the defendant's negligence, the Plaintiff has suffered great pain and mental anguish, has been unable to return to work and has lost wages and will in the future continue to lose wages, has incurred significant medical bills and will in the future continue to incur significant medical bills, has been unable to engage in his activities of normal life and remain unable to engage in activities in normal life.

WHEREFORE, the Plaintiff, DAVID C. HILL, prays that this Court enter a judgment in his favor and against the Defendant, CARLE FOUNDATION HOSPITAL, as follows:

A.     Compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00); and

B.     For such other relief as this Court deems just and appropriate.

DATED this 14th day of July 2014.

DAVID C. HILL, Plaintiff


<u>s/William R. Tapella</u>
William R. Tapella Bar Number: 6220468
Attorney for Plaintiff
Tapella & Eberspacher LLC
P.O. Box 627
Mattoon, IL 61938-0627
T: (217) 639-7800
F: (217) 639-7810
tapella@foryourjustice.com
bw.7.14.14 #5-3096.0000

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
CHAMPAIGN, ILLINOIS

DAVID C. HILL,                                          )
                                                       )
       Plaintiff,                                  )
                                                       )
                                                       )
vs.                                                    )      Case
                                                       )
MARK MASSE, CARLE THERAPY SERVICES,  )
and CARLE HEALTHCARE, INC.                             )
                                                       )
       Defendants,                                 )

## AFFIDAVIT

STATE OF ILLINOIS        )
                         ) SS.
COUNTY OF COLES          )

1.      I, WILLIAM R. TAPELLA, being first duly sworn, deposes and says that I am an attorney licensed to practice in the State of Illinois.

2.      I have been employed by Plaintiff, DAVID C. HILL.

3.      I have submitted the medical records and other relevant materials concerning care and treatment provided to DAVID C. HILL by the Defendants in this matter to a physician licensed by the State of Illinois and to a physical therapist licensed by the States of Missouri and Kansas to practice physical therapy.  The physician and physical therapist who reviewed the medical records and other relevant materials practiced and continue to practice in the area of medicine and physical therapy that is at issue.

4.      The Affiant, believes that the physician and physical therapist are qualified by training, and experience in the subject matter presented in this case.

-1-

5.     The Affiant has received letters from the physical therapist wherein the physical therapist has stated that the Defendant, MARK MASSE deviated from the appropriate standard of care in his treatment of DAVID C. HILL and where the physician has stated that DAVID C. HILL suffered injuries as a result of the Defendant's deviation.  Both have opined that there is a reasonable and meritorious cause for filing a medical malpractice action against the Defendant.

6.     Based upon my review of the letters prepared by the reviewing healthcare professionals, I am of the opinion that there is a reasonable and meritorious claim to be brought against the Defendants.

7.     A copy of the letters received by this Affiant is attached hereto as "Exhibit A and Exhibit B."  FURTHER AFFIANT SAYETH NOT.

DATED this 14th day of July 2014.

DAVID C. HILL, Plaintiff


s/William R. Tapella
William R. Tapella Bar Number: 6220468
Attorney for Plaintiff
Tapella & Eberspacher LLC
P.O. Box 627
Mattoon, IL 61938-0627
T: (217) 639-7800
F: (217) 639-7810
tapella@foryourjustice.com
bw.7.14.14 #5-3096.0000


Subscribed and sworn to before me
this _14th_ day of _July_ 2014.

_Bonnadelle Willoughby_
Notary Public

OFFICIAL SEAL
BONNADELLE WILLOUGHBY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/08/15

-2-

# *DANIEL S. LORENZ, DPT, PT, ATC/L, CSCS, USAW*

Expert Legal Witness
Experts in Therapy, LLC

July 26, 2010

Mr. William R. Tapella
Hefner, Eberspacher & Tapella, LLC
P.O. Box 627
Mattoon, IL 61938-0627

Re:   Your client: David C. Hill
      Your File: 5-3096.0000

Dear Mr. Tapella,

By way of background, I am a physical therapist licensed by the States of Missouri and Kansas. I have a Bachelor's degree in Health Sciences with an emphasis in Athletic Training from Grand Valley State University and a Masters of Science in Physical Therapy from that same University. I am a Doctor of Physical Therapy with a DPT from the University of St. Augustine with an emphasis in manual therapy. I completed a Fellowship at Duke University Sport Physical Therapy. I am well familiar with the standard of care that applies to physical therapists, including physical therapy for the rehabilitation of a patient following rotator cuff surgery.

At your request, I have completed a review of medical records provided to me for David Hill. Specifically, I have reviewed medical records from Carle Clinic Association, Carle Foundation Hospital, and Carle Therapy Services. With regards to the Carle Therapy records, those records included treatment of David Hill from March 2008 through July 2008. Based upon my review of those medical records, David underwent surgery to repair a torn left rotator cuff on February 15, 2008. Following that surgery, Dr. Robert Gurtler referred Mr. Hill for physical therapy to Carle Therapy Services, where he came under the care of Mark Masse, PT, MHS. Mr. Hill started physical therapy on March 3, 2008, and continued in physical therapy through July 29, 2008.

Under the standard of care for a reasonably careful physical therapist, Mr. Masse had an obligation to take specific note of this patient's condition at the initiation of physical therapy. Of particular concern, Mr. Masse noted that Dr. Gurtler had identified the rotator cuff tear as a "large tear, poor quality tissue." The presence of a large tear, especially with poor quality tissue, requires the physical therapist to take every possible precaution in a slow progression of physical therapy to address the rehabilitation of this patient's shoulder. Initially, Mr. Masse did a reasonable job of providing that slow progression in



Mr. Hill's care. Additionally, it is anticipated that a patient will have some degree of fatigue and weakness as they progress through a rehabilitation program. However, on May 27, 2008, in his assessment, Mr. Masse noted "client's strength program is progressing. Still have fatigue with repeated reps against gravity, he has full AROM [active range of motion], needs to be able to list [lift] 50 pounds to RTW [return to work]." Mr. Hill returned to Mr. Masse for physical therapy on May 29, 2008. Despite his acknowledgment of fatigue in the arm with repeated lifting against gravity, Mr. Masse failed to modify Mr. Hill's rehabilitation program. His decision to continue despite documented fatigue, with the same resistance training regimen (bicep hoist 50#, mid row 50#, standing tricep ext 60#, and 20 repetitions for several exercises) constituted a deviation from the standard of care for a reasonably careful physical therapist.

In addition to the above exercises, Mr. Masse added an additional exercise on July 14, 2008. On that date, Mr. Masse required Mr. Hill to perform a box lift. In that exercise, Mr. Masse required Mr. Hill to lift the box weighted at 35 pounds and 45 pounds to shoulder height. In that exercise, Mr. Hill was required to lift the box from the floor and raise the box to shoulder level. Open kinetic chain functional activities such as box lifting place a significant strain on the shoulder joint, especially the rotator cuff muscles. As with some other exercises, Mr. Masse failed to start Mr. Hill at light weights and progress to heavier weights. While Mr. Hill needed to be able to lift 50 pounds for his job, it was inappropriate to begin at 35 and 45 pounds. His decision to initiate box lift exercises at the substantial weights prescribed by Mr. Masse without appropriate prior progression with lighter weight constituted a deviation from the standard of care.

Following the initiation of progressive resistance training on May 29, 2008, Mr. Masse continued that training throughout the duration of Mr. Hill's care, despite subsequent subjective reports of fatigue, pain, and tingling. Mr. Masse noted throughout his record that the exercises were causing significant fatigue. See note on June 12, 2008, June 16, 2008 (specific external rotator weakness), June 19, 2008, July 9, 2008 (continue to notice weakness in left arm and fatigue with activity). Of particular concern, on July 16, the first visit after the start of the box lift exercise, and thereafter, Mr. Masse notes continued pain and tingling in the left arm. With his previous notations concerning fatigue and weakness, particularly the notes beginning on July 16, 2008, concerning pain and tingling, the standard of care for a reasonably careful physical therapist required Mr. Masse to rethink his physical therapy for this patient. The standard of care would direct the physical therapist to have moved back to lighter weights, no weight at all, or strengthening in gravity-eliminated positions. His failure to rethink the physical therapy for this patient by continuing to perform resistance exercises as prescribed by Mr. Masse constituted a deviation from the standard of care, given that the patient had pain, fatigue, and tingling.

As a physical therapist, I am well familiar, and well trained, and competent to testify as to the relationship of specific exercises to the muscles in the human body, including shoulder muscles. It is my opinion to a reasonable degree of professional certainty that

the progression of resistance exercises in this case, especially the box lift exercise
initiated July 14, 2008, would place a great deal of strain upon the patient's rotator cuff.
It is further my opinion that the initiation of such and exercise at such heavy weights,
coupled with the continuation of other listed resistance exercises over a period of time,
despite continued reports of fatigue and weakness, would have exerted strain upon the
muscles in Mr. Hill's rotator cuff, which could contribute to a tear. Based upon my
review of the medical records, my education, training and experience as a physical
therapist, I believe that there is a reasonable and meritorious cause of action against Mr.
Masse arising from his care and treatment of Mr. Hill.

Thank you for the opportunity to have participated in this matter. I am available to testify
at deposition and trial should such testimony be necessary in this matter. I reserve the
right to change my opinions in the event that I receive new or additional information.

Very truly yours,

Daniel S. Lorenz

Daniel S. Lorenz, DPT, PT, ATC/L, CSCS, USAW

# OCCUPATIONAL MEDICINE ASSOCIATES OF CHICAGO, LTD.

### 22 NORTH MORGAN, SUITE 110
### CHICAGO, ILLINOIS 60607

Telephone (312) 733-6622
Fax (312) 733-8606

JEFFREY COE, M.D., PH.D.
*Board Certified Occupational Medicine*
*Medical Director, Occupational Medicine Associates of Chicago*

CORRADO UGOLINI, M.D., M.P.H.
*Board Certified Internal Medicine*

DAVID ROBERTSON, M.D.
*Board Certified Orthopedic Surgery*

Mr. Paul A. Marks
Attorney at Law
Hefner, Eberspacher & Tepella, LLC
PO Box 627
Mattoon, IL 61938-0627

July 10, 2012

**RE:   David Hill**

Dear Mr. Marks:

At your request, on July 10, 2012, I examined your client, Mr. David Hill.  I also reviewed a number of Mr. Hill's treatment medical records.  The medical records that I reviewed were of a type customarily relied upon by physicians.

**HISTORY:**

Mr. David Hill is a 56-year-old male. Mr. Hill states that he noted the gradual onset of left shoulder pain over a number of years.  He reported that he initially injured his left shoulder years earlier and had experienced some left shoulder discomfort made worse by his work activities as a utility relief worker for RR Donnelly in Mattoon, Illinois. Mr. Hill states that his left shoulder symptoms became increasingly severe in 2007, as cuts in staff led to increased demand for heavy lifting, pulling and pushing.

Because of ongoing symptoms, Mr. Hill sought medical treatment for left shoulder pain.  A left shoulder MRI scan was prescribed and was performed on October 31, 2007.  The scan was interpreted as showing a large "defect" in the distal supraspinatus at the site of the insertion of this tendon onto the greater tuberosity of the humerus.  The defect was consistent with a large, full thickness left rotator cuff (supraspinatus) tear.  The MRI scan also revealed subscapularis tendinopathy and moderate degenerative change of the glenohumeral and acromioclavicular joints of Mr. Hill's left shoulder.

**EXHIBIT B**

Page Two                  RE:  David Hill                  July 10, 2012

On December 6, 2007, Mr. Hill was examined by an orthopaedic specialist, Dr. Gurtler. He gave a history of severe left shoulder symptoms with anterior and superior left shoulder pain and left shoulder stiffness. Mr. Hill reported that his left shoulder symptoms had begun approximately 15 years earlier and that his left shoulder had then "bothered him." Dr. Gurtler's examination found decreased left shoulder range of motion with pain and weakness. Dr. Gurtler reviewed the left shoulder MRI scan, interpreting this test as showing a large left shoulder rotator cuff tear with left shoulder degenerative change. Dr. Gurtler prescribed left shoulder open rotator cuff repair surgery.

Mr. Hill underwent surgery to his left shoulder performed by Dr. Gurtler on February 15, 2008, at the Carle SurgiCenter. According to records reviewed, at operation, Dr. Gurtler observed full thickness tearing of the supraspinatus with some tendon retraction and degenerative change at the acromioclavicular joint. Exploration found Mr. Hill's glenoid labra and biceps tendon to be intact. Dr. Gurtler performed open left shoulder rotator cuff repair and acromioplasty. Dr. Gurtler described Mr. Hill's rotator cuff "tissue" to be of moderate to poor quality. The rotator cuff repair was completed without complication. Sterile dressings were then applied to Mr. Hill's left shoulder, his left arm was immobilized and he was given medication for pain.

On December 28, 2008, Mr. Hill returned to Dr. Gurtler. At that time, he was described as "doing pretty well." Dr. Gurtler discussed the operative findings including a large rotator cuff tear. Dr. Gurtler expressed concern due to the size of the rotator cuff tear and the nature of Mr. Hill's rotator cuff "tissue". He specifically stated that, in view of these factors observed during the surgery, Mr. Hill would have to "go pretty slow" in rehabilitation. Dr. Gurtler recommended two weeks of rest prior to beginning a "passive range of motion" program, passive range of motion for six weeks followed by an active, assisted motion program.

Mr. Hill was evaluated for physical therapy at the Carle Clinic on March 10, 2008. He was found to be improving at that time in the shoulder immobilizer. Mr. Hill reported only occasional shoulder pain. Physical therapy assessment found flexion and abduction with assistance to 70 degrees with little discomfort. Physical therapy was begun with passive range of motion exercises and instruction in home pendulum exercise. Mr. Hill was advised to avoid any lifting with his left arm.

Page Three                         RE:  David Hill                    July 10, 2012

Mr. Hill continued in physical therapy and in the care of Dr. Gurtler.  He was reexamined by Dr. Gurtler on April 15, 2008.  Examination found healing at the left shoulder operative site with mild residual tenderness.  Improved motion was noted with abduction to 100 degrees and flexion to 120 degrees.  Dr. Gurtler discussed return to work with Mr. Hill.  Dr. Gurtler stated that Mr. Hill should not even consider return to work until four months following his shoulder surgery of February 2008.  Dr. Gurtler specifically stated that he was concerned regarding Mr. Hill's potential for re-tear of the rotator cuff with increased activities.  Additional physical therapy was prescribed.

Mr. Hill continued in his course of physical therapy.  Physical therapy notes from the Carle Clinic reflect follow-up visits on a regular basis.  On May 15, 2008, Mr. Hill's therapist again noted that there had been a large tear of the supraspinatus with poor quality tissue according to Dr. Gurtler's notes.

Return visits to the physical therapist continued with visits on May 19, May 22, and May 27, 2008.  On May 27, 2008, Mr. Hill was also reexamined by Dr. Gurtler who found residual left shoulder stiffness and discomfort as well as left shoulder tenderness and weakness.  Dr. Gurtler prescribed continued physical therapy.  He noted that Mr. Hill wanted "to get back to work," but stated his medical opinion that release for return to his customary occupation "could take time."

Mr. Hill continued in physical therapy.  On June 24, 2008, he returned to Dr. Gurtler who noted additional improvement  but again stated that he and Mr. Hill were "going to have to take our time" with rehabilitation as Mr. Hill's work was "very heavy."

Further physical therapy was carried out through July 2008.  Mr. Hill was found to be doing well by his physical therapist on July 11, July 14, and July 16, 2008, with occasional pain and some left arm tingling.

Page Four                          RE:  David Hill                          July 10, 2012

In July 2008, Mr. Hill states that his therapist recommended that he increase weightlifting in physical therapy activities.  Mr. Hill describes his therapist as directing him to lift a crate filled with weights.  Mr. Hill states that he informed his therapist that it was difficult for him to lift the crate and that he told his physical therapist that the crate was "too heavy."  In spite of this report, Mr. Hill states that he was directed by his therapist to lift the crate onto a shelf.  Mr. Hill carried out this activity as instructed but experienced increased left shoulder pain.  Mr. Hill was directed by this therapist to repeat this lift/reach.  Mr. Hill states that he felt a "pop" in his left shoulder as he lifted the heavy crate and reached out to place it on the shelf.  Mr. Hill states that he reported these symptoms to his physical therapist.  He states that the therapist then stopped the lifting/reaching exercise, "taped" his shoulder and performed more passive therapies.

On July 22, 2008, Mr. Hill's physical therapy records reflect a complaint of increased left shoulder pain in the past week.  His therapist recorded that Mr. Hill was "just not able to tolerate progression" and that this was frustrating to Mr. Hill.

Mr. Hill states that he continued to experience significant left shoulder pain.  On July 25, 2008, he reported shoulder pain at a level of 5-6/10.  Continued pain was also reported to his therapist on July 29, 2008, with tingling in his left arm made worse by exertion.

Mr. Hill was reexamined by Dr. Gurtler on July 31, 2008.  Dr. Gurtler obtained the history that "something went" in Mr. Hill's left shoulder with lifting in physical therapy and that Mr. Hill had experienced left shoulder pain since the event.  Following examination, Dr. Gurtler prescribed a left shoulder arthrogram.

The left shoulder arthrogram was performed on August 4, 2008.  This test was interpreted as showing a recurrent, full thickness rotator cuff tear.

Dr. Gurtler reexamined Mr. Hill and reviewed the arthrogram on August 19, 2008.  Dr. Gurtler diagnosed a "re-tear" of the rotator cuff and recommended repeat left shoulder surgery.

On August 29, 2008, Mr. Hill underwent surgery to his left shoulder performed by Dr. Gurtler at the Carle SurgiCenter.  At operation, Dr. Gurtler observed a new tear of the rotator cuff just medial to the old repair.  He described the prior operative attachment of the rotator cuff to bone as intact.  Dr. Gurtler performed repair of the new rotator cuff tear.  Sterile dressings were applied to Mr. Hill's left shoulder and he was given medication for pain.  His left arm was again immobilized.

Page Five                          RE:  David Hill                          July 10, 2012

On September 9, 2008, Dr. Gurtler discussed the operative findings with Mr. Hill. He noted that Mr. Hill's rotator cuff had torn in an area adjacent to the initial tear. At this visit, Mr. Hill reported decreased left shoulder pain. Dr. Gurtler specifically stated that Mr. Hill's rehabilitation was "going to go slow this time." Concern was expressed that Mr. Hill needed to return to work by December 20, 2008 to preserve his job. Dr. Gurtler advised limited activity for one month to allow healing followed by initiation of range of motion exercises.

Physical therapy was resumed at a different physical therapy center (Central Illinois Physical Therapy) on October 7, 2008. The physical therapist assessed Mr. Hill's left shoulder and noted Dr. Gurtler's instructions that no weightlifting or strengthening exercises were to be initiated until four months following surgery.

Mr. Hill carried out physical therapy, largely with passive stretching exercises. He states that these movements in therapy caused pain in his left shoulder. Mr. Hill reported his left shoulder symptoms to Dr. Gurtler on November 18, 2008. Dr. Gurtler's examination on that date found residual left shoulder stiffness (elevation to 90 to 100 degrees). Dr. Gurtler then discontinued physical therapy and prescribed left shoulder rest, home passive exercises as tolerated, continued use of the left shoulder immobilizer and medication. With regard to work, Dr. Gurtler stated his opinion that Mr. Hill would likely require permanent restriction limiting weightlifting and overhead use of the left arm. Dr. Gurtler also noted that, with these restrictions, Mr. Hill would probably be unable to return to his prior job at R.R. Donnelly.

With rest and limited left shoulder activities, Mr. Hill reported decreased left shoulder pain to Dr. Gurtler on December 16, 2008. Following reexamination on that date, Dr. Gurtler prescribed continued home exercises and therapy activities.

On February 6, 2009, Mr. Hill returned to Dr. Gurtler and reported additional improvement in his left shoulder symptoms. On that date, Dr. Gurtler summarized Mr. Hill's clinical course stating that his "original repair was apparently re-torn in physical therapy." Dr. Gurtler advised continued active assisted range of motion exercises for an additional month with limited, light strengthening activities.

Mr. Hill states that he continued to experience pain in his left shoulder with any exertion. He states that his left shoulder would swell on occasion and that the left shoulder pain would sometimes radiate to the elbow region.

Page Six                           RE:  David Hill                           July 10, 2012

On March 6, 2009, Dr. Gurtler's examination found improved range of motion of Mr. Hill's left shoulder, although movement was associated with shoulder pain. Dr. Gurtler advised continued anti-inflammatory and analgesic medication and home passive range of motion exercises (using a pulley) as well as left shoulder rest and ice application.

On April 16, 2009, Mr. Hill returned to Dr. Gurtler. He stated that his left shoulder pain had decreased. Examination found residual left shoulder weakness and stiffness. Dr. Gurtler stated that Mr. Hill had now "probably" reached maximum medical improvement. He recommended home strengthening exercises for Mr. Hill's left arm (biceps and triceps) and discussed rotator cuff strengthening but advised Mr. Hill to limit rotator cuff stress by "keeping the weight low" (1 to 5 pounds). Dr. Gurtler specifically advised Mr. Hill to limit any heavy rotator cuff lifting. Mr. Hill was given a permanent work restriction:  10-pound lifting limitation below shoulder height and avoidance of any overhead or repetitive lifting. Mr. Hill states that he was told by Dr. Gurtler to follow-up on an as needed basis and to "be careful with his left shoulder."

At present, Mr. Hill states that he is no longer followed by specialist physicians for his left shoulder. As noted above, he has been told to return to Dr. Gurtler on an as needed basis. He states that he takes no medication and performs no specific treatments or therapies for his left shoulder.

**PAST MEDICAL HISTORY:**

As noted above, Mr. Hill states that he has a past medical history of left shoulder discomfort. He states that, years earlier, he slipped and fell, grabbing with his left arm to break his fall and stretching his left shoulder. He states that this accident "jerked" his left shoulder and caused the onset of shoulder pain. He states that he was treated at that time and experienced left shoulder symptom improvement, although he experienced some ongoing left shoulder discomfort that became increasingly severe in 2007, as described above.

Mr. Hill states that he has a past medical history of neck injury and underwent surgery for splenectomy.

Page Seven                    RE:  David Hill                    July 10, 2012

Mr. Hill also has a history of cardiovascular disease and depression for which he continues to be treated medically.

Prior to Mr. Hill's left shoulder symptoms of 2007 and the surgeries described above, he enjoyed recreational activities including bow hunting and automobile maintenance.  He stated that he now limits these recreational activities following left shoulder surgery and reinjury with later surgery.

## CURRENT COMPLAINTS:

At the time of this examination, Mr. Hill complained of postoperative scarring of his left shoulder.  He complained of left shoulder stiffness and weakness.  He stated that his left shoulder pain was made worse by lifting or reaching with his left arm extended.  He complained of occasional tingling in his left shoulder and upper arm.

## EXAMINATION:

On examination today, Mr. Hill was a well-developed, well-nourished male.  He appeared to be his stated age of 56-years.  He was alert, oriented and cooperative in the examination.

He was 6' 2" tall and weighed 310 pounds (he stated that he had gained more than 20 pounds following the left shoulder surgeries and complications described above).

He stated that he was right-handed.

Examination of Mr. Hill's shoulders revealed a 3-inch compound, hypopigmented, well-healed scar of the superior and lateral border of the left shoulder.  The scar was not tender to palpation.

There was tenderness over the left shoulder anterior glenohumeral and acromioclavicular joints.  There was no tenderness of the right shoulder.

Page Eight                          RE:  David Hill                          July 10, 2012

Range of motion of the shoulders: Abduction 180 degrees on the right, 135 degrees on the left, normal being 180 degrees; forward elevation 180 degrees on the right, 160 degrees on the left, normal being 180 degrees; external rotation 40 degrees on the right, 35 degrees on the left, normal being 40 degrees; internal rotation 40 degrees on the right, 35 degrees on the left, normal being 40 degrees.

Mr. Hill complained of anterior and lateral left shoulder pain with movement of his left shoulder beyond 90 degrees of abduction and elevation.

There was moderate left shoulder subacromial crepitus.  There was no crepitus of the right shoulder.

Mr. Hill's left shoulder impingement sign was positive; the right shoulder impingement sign was negative.

Mr. Hill was able to reach behind his back with his right arm and touch his outstretched thumb to the lower lumbar region; with his right thumb, he was able to touch the mid thoracic region.

Measurement of the circumference of the biceps at 4 inches above the olecranon:  14 inches on the right, 13 inches on the left.

Muscle strength about the shoulder girdle:  Resisted forward elevation 5/5 on the right, 4/5 on the left; resisted backward elevation 5/5 on the right, 5/5 on the left; isolated supraspinatus strength 5/5 on the right, 4/5 on the left.

Left shoulder strength testing was associated with anterolateral left shoulder pain complaints.

Sensation of the upper extremities was grossly intact and symmetrical to light touch.

Both upper extremities were warm to touch.  There was no abnormal coloration or sweating of the upper extremities.

Peripheral pulses of the upper extremities were grossly intact and bilaterally symmetrical.  Venous return of the upper extremities was intact bilaterally.

The Adson's signs were negative bilaterally.

RE:  David Hill                     July 10, 2012

**CASE SUMMARY:**

Mr. Hill developed a large left shoulder rotator cuff tear as diagnosed by Dr. Gurtler in December, 2007. He underwent left shoulder rotator cuff repair surgery performed by Dr. Gurtler on February 15, 2008. Rehabilitation therapy was then begun. Dr. Gurtler specifically expressed concern that therapy proceed slowly due to the moderately poor quality of Mr. Hill's rotator cuff tissue (see operative report and note of February 28, 2008).

Mr. Hill's physical therapy initially was carried out as prescribed by Dr. Gurtler and he reported left shoulder symptom improvement. However, the records of Dr. Gurtler's examinations of Mr. Hill in May and June of 2008 noted continued complaints of left shoulder pain and stiffness. On June 24, 2008, Dr. Gurtler again stated that patience and slow progression in therapy was required due to his concerns about the quality of Mr. Hill's rotator cuff tissue and, by association, the stability of the repair.

In July, 2008, Mr. Hill's therapy was advanced to active lifting and reaching to place weighted boxes on shelves. Mr. Hill expressed concern to his therapist that the boxes were "too heavy" and that he was having difficulty in this exercise. While performing this directed activity, Mr. Hill's left rotator cuff broke down and re-tore. He reported recurrent, increased left shoulder pain to his therapist and was treated with passive modalities. Mr. Hill's recurrent left shoulder symptoms persisted. A repeat left shoulder arthrogram was then performed showed a recurrent rotator cuff tear. Repeat left shoulder surgery was performed by Dr. Gurtler on August 29, 2008, with finding of a re-tear of the rotator cuff medial to the prior repair site.

Following the repeat rotator cuff repair surgery, additional physical therapy was carried out at a different physical therapy center. Dr. Gurtler again specifically stated the need for slow progression in physical therapy, now limiting any weightlifting or strengthening until four months following the surgery. With resumption of physical therapy, Mr. Hill reported increasing shoulder pain, causing therapy to be discontinued by Dr. Gurtler on November 18, 2008. Mr. Hill was stated to be at maximum medical improvement by Dr. Gurtler on April 16, 2009. He was returned to work at that time with permanent restriction, lifting 10 pounds or less and avoidance of left arm overhead or repetitive lifting.

Examination today found postoperative scarring of Mr. Hill's left shoulder. There was associated tenderness at the left shoulder acromioclavicular and anterior glenohumeral joints. There was associated decreased range of motion of Mr. Hill's left shoulder in abduction, forward elevation, external and internal rotation with crepitus and subacromial impingement symptoms. There was associated atrophy of Mr. Hill's left upper arm and weakness of his left shoulder girdle musculature.

## CONCLUSION:

Based on the findings of this examination, it is my opinion that Mr. Hill experienced symptoms and clinical findings consistent with a rotator cuff tear in 2007, for which he underwent appropriate medical and surgical treatment, including the left rotator cuff repair surgery performed by Dr. Gurtler on February 15, 2008. As noted above, Dr. Gurtler specifically expressed concern due to the quality of Mr. Hill's left shoulder rotator cuff "tissue," cautioning that slow and controlled progression was required in physical therapy to prevent recurrent rotator cuff tearing. Unfortunately, with lifting and reaching weighted boxes in physical therapy in July, 2008, Mr. Hill suffered a recurrent rotator cuff tear. Repeat left shoulder rotator cuff repair surgery was required and was performed by Dr. Gurtler on August 29, 2008. Mr. Hill underwent additional post-operative physical therapy but was unable to regain left shoulder functioning beyond the "sedentary" physical demand level and has been unable to return to his prior occupation or customary daily life activities.

Based on the history obtained from Mr. Hill, treatment medical records reviewed and my examination of Mr. Hill on July 10, 2012, it is my opinion that he likely would have recovered fully from his initial left shoulder rotator cuff repair surgery but for the subsequent recurrent rotator cuff tear that occurred due to the excessive force required in lifting and reaching in physical therapy activities in July 2008, as directed by his physical therapist, Mr. Mark Masse. This opinion is stated to a reasonable degree of medical certainty.

In my opinion, based on current examination findings, Mr. Hill requires permanent work restriction due to the condition of ill-being of his left shoulder. Appropriate work restriction would include a limitation in use of his left arm above shoulder height, limitation in repetitive lifting below shoulder height, reaching, pulling or pushing and a limitation in left arm lifting to 10 pounds or less. This restriction is permanent and would limit Mr. Hill's ability to engage in vocational activities as well as activities of a daily life.

Page Eleven                     RE:  David Hill                    July 10, 2012

If I may be of further assistance in this case, please feel free to contact me.

Sincerely,

Jeffrey E. Coe, M.D., Ph.D.

JEC:ss